IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY ROSADO, o/b/o J.R.A.,  Plaintiff, vs. MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,  Defendant. | Case No. 11-cv-405-TLW |

**OPINION AND ORDER**

Plaintiff Kelly Rosado, pursuant to 42 U.S.C. §§ 405(g), 416(i), and 1382, requests judicial review of the decision of the Commissioner of the Social Security Administration denying her application for disability benefits under Title XVI of the Social Security Act ("Act") for her minor child.[1] In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 8). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

**Review**

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[1] For the purpose of clarity, the Court will refer to Ms. Rosado as "plaintiff" and to her child as "the child."

considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next step is to determine whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: (1) meets, medically equals, or functionally equals the listings of impairments for children;[2] and (2) meets the duration requirement.

If the child does not have impairments of a severity that meet a listing, the severity of the limitations imposed by the impairments are analyzed to determine whether the limitations "functionally" equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

---

[2] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App.1.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge] [("]ALJ[")]'s findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 416.913(a).

## Background

The child was born April 27, 2007 and was 3 years old at the time of ALJ Charles Headrick's final decision on May 17, 2010. (R. 11, 81). Plaintiff protectively filed a Title XVI

claim on December 3, 2008, alleging a disability onset date for her son of April 27, 2007 due to bilateral club foot. (R. 81, 104). Plaintiff and the child appeared at a hearing before the ALJ on April 19, 2010. The ALJ issued his decision on May 17, 2010, denying plaintiff's claim for benefits for her child. Plaintiff appealed that decision to the Appeals Council, which declined to review the decision of the ALJ. (R. 1-4).

**Hearing Summary**

Plaintiff testified to several surgeries, casting, and braces her son has received to attempt to correct his feet. She stated her son walks now, mainly with a push toy, but has a lot of pain. (R. 35-39). She stated when the child is in pain, he will "put his braces on himself and he'll just sit there." (R. 39). Plaintiff also said the child is unable to kick a ball or walk up and down stairs. Id. She stated he walks with a limp because the bone connected to his left hip "was turned in so bad that it just kind of made his hip be out of place a little bit." (R. 40).

**Medical Records**

The child's medical records cover the period of July 18, 2007 through July 27, 2009, and include treating physicians, medical testing, and a state consultative examination. (R. 131-136, 137-140, 141-159, 160-171, 172-193, 194-199, 200-217, 218-223, 224-229, 230-232, 233-238). The child's bilateral club feet were treated with leg casts, braces, stretching exercises, and surgery to lengthen his Achilles tendons. The child's right foot problem is "substantially resolved," but his left foot remains a problem. According to Shriner's Hospital, the child's prognosis was unknown at the time of the hearing. (R. 21).

**Procedural History**

Plaintiff alleges that the child's disabling impairment is bilateral club feet. (R. 81, 104). In assessing the child's qualifications for disability, the ALJ determined the child had not

4

engaged in substantial gainful activity since the application date of December 3, 2008. At step two, the ALJ found the child suffered the severe impairment of "[b]ilateral [c]lub foot." (R. 17). At step three, the ALJ determined the child's impairments, singularly and in combination, did not meet or equal a listed impairment, focusing on listing 101.00, pertaining to disorders of the musculoskeletal system. Id. Finally, the ALJ determined the child's impairments also did not functionally equal a listing, thus finding the child not disabled from the application date of December 3, 2008, through the date of his decision. (R. 18, 27).

## Issues Raised

Plaintiff's allegations of error are as follows:

1. The ALJ failed to properly consider that the child meets or equals a listing,
2. The ALJ failed to properly evaluate the functional meeting of a listing, and
3. The ALJ failed to perform a proper credibility determination.

(Dkt. # 12 at 2).

## Discussion

**Meeting or Equaling a Listing**

Plaintiff alleges that the ALJ applied the incorrect listing requirement. Plaintiff argues the child should have been evaluated under "Listing § 101.00B2b(3)" which applies to "'older children who would be expected to be able to walk when compared with other children the same age who do not have impairments.'" (Dkt. # 12 at 2) (emphasis removed) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 101.00B2b(3)). Defendant argues the ALJ made no mistake in his determination in this area. The Court agrees with plaintiff's argument; therefore this issue is remanded to the ALJ to conduct his analysis under the proper listing.

5

**Functionally Meeting a Listing**

First, plaintiff argues the child suffers an extreme rather than a marked limitation in the domain of "Health and Physical Well-Being." (Dkt. # 12 at 5). The Court is not permitted to reweigh the evidence to determine whether the evidence supports a finding of "extreme" versus "marked" limitation, and, after a review of the record, the Court finds that substantial evidence supports the ALJ's finding of a marked limitation in this domain. The marked limitation in the "Health and Physical Well-Being" domain is, therefore, affirmed.

Second, plaintiff argues the child also has at least a marked limitation in the domain of "Moving About and Manipulating Objects." (Dkt. # 12 at 5). In the "Moving About and Manipulating Objects" domain, the ALJ found:

> The claimant has no limitation in moving about and manipulating objects. The claimant's mother and attorney contend that the claimant's impairment of both feet cause him to be limited in moving about and manipulating objects. However, according to evidence of record the claimant has no difficulty using his arms or hands and while he may have balance issues due to his left foot, he has worked out methods of getting where he wants to go. As noted above, while Ms. Rosado testified that the claimant failed to crawl (due to ongoing treatment for club feet), or walk within the "milestone" timeframes, in one record, when the claimant was twelve months of age, Ms. Rosado was instructed to child-proof her home, and not to leave the claimant unattended at any time. *This evidence is a clear indication that the claimant was moving about freely and autonomously. Even if the claimant's gait and balance are not perfect, he is able to grasp objects and ambulate where he wishes to go and has worked out methods of accomplishing his goals.* Ms. Rosado testified that the claimant is unable to kick a ball and unable to climb stairs. These limitations are not significant enough to warrant a finding of a limitation in the claimant's ability *to interact with or relate to others.*[3]

(R. 25) (emphasis added). However, in the "Health and Physical Well-Being" domain, the ALJ found that "[t]he surgeries, bracing and casting has [sic] caused the claimant marked limitations in his ability to ambulate over the three year period."

---

[3] The Court notes that this domain has nothing to do with the child's ability to "interact with or relate to others."

(R. 27) (emphasis added). Thus, the ALJ's findings are in conflict. On the one hand, the ALJ found that the child "has no limitation in moving about and manipulating objects." On the other hand, the ALJ found that "surgeries, bracing and casting has [sic] caused the [child] marked limitations in his ability to ambulate over the three year period." It is not the Court's role to resolve such a conflict. See Hackett, 395 F.3d at 1172; Grogan, 399 F.3d at 1261. Thus, this case must be remanded so that the ALJ can either explain why no conflict exists or resolve the conflict.

**Credibility**

Plaintiff complains that the ALJ failed to properly consider her credibility. The Court disagrees. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation and citation omitted). The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." Id. The ALJ is allowed to consider objective factors, such as attempts to find relief, use of medications, regular contact with doctors, and daily activities when determining a claimant's credibility. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).

Here, the ALJ found as follows:

> In evaluation [sic] the medical evidence and reconciling the evidence with testimony, Ms. Rosado's testimony that the [child] suffers from pain or discomfort from his feet is not supported by similar reports to the [child's] treating physicians. Common sense would dictate that if the [child] were suffering from ongoing pain, the [child's] mother would report this condition to physicians at OSU or Shriner's. While Ms. Rosado stated that the [child's] physician(s) would not give him anything for pain, no complaint of pain or denial of pain medication is made a part of this record.

> According to the medical evidence of record and the testimony of the [child's] mother, the [child] has not completed his treatment with Shriner's. Although incomplete, it is evident that based upon medical evidence of record, the [child's] condition is not as extreme as that described by the [child's] mother.
>
> …
>
> The undersigned has some concern about the credibility of Ms. Rosado's testimony that the [child's] father has no legally enforceable financial obligation for his son. No divorce decree or agreement was presented on this record. However, Ms. Rosado's [sic] testified that she receives no child support because she has an agreement for joint custody with the [child's] father. An order that fails to order child support by one parent to another would be highly unusual in a Tulsa County family court. The State of Oklahoma has a strong public policy to require parents to financially support their children. … Child support is based upon respective parents' income, actual or imputed. Ms. Rosado apparently does not work (she testified that the [child's] only financial support is that which his mother receives from her other … children's father(s)). Thus it seems unlikely that an Oklahoma court would knowingly permit the nonpayment of child support in this circumstance by a parent who is working, has worked, or is able to work.

(R. 21). Clearly, the ALJ linked his credibility determination to specific evidence in the record.

Given the deference afforded the ALJ in this area, the Court affirms his credibility determination.

## **Conclusion**

For the foregoing reasons, this case is REVERSED and REMANDED as set forth herein.

The decision is otherwise affirmed.

SO ORDERED this 24th day of September, 2012.

_____
T. Lane Wilson
United States Magistrate Judge